Filed 1/24/24  Knowles v. Longwood Management Corp. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| FABIAN KNOWLES, | B314165 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. |
| v. | Nos. 19STCV31526, 20STCV44876, |
| LONGWOOD MANAGEMENT CORP. et al., | 21STCV11563) |
| Defendants and Appellants. | |
| JOANNA CHAVEZ et al., | B321047 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. |
| v. | No. 19STCV31526) |
| LONGWOOD MANAGEMENT CORP. et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |

THE COURT:*

IT IS HEREBY ORDERED that the opinion filed herein on January 3, 2024, be modified as follows:

On page 38, at the end of the first full paragraph, add the following as footnote 19 after the word "demurrer."

> In their petition for rehearing, the Chavez plaintiffs cite numerous cases concerning the stay versus dismissal issue that they did not previously cite in their briefing to this court. The Chavez plaintiffs have expressed no reason for their failure to bring these cases to the court's attention until the filing of their petition for rehearing. We disregard the untimely filed authority and decline to address it in detail. However, we note that none of the cases cited mandates that the trial court issue a stay following the sustaining of a demurrer under the circumstances of this case.

This will require renumbering subsequent footnotes.
There is no change in the judgment.
Plaintiffs and appellants' petition for rehearing is denied.

---

\*      LUI, P. J.          CHAVEZ, J.          HOFFSTADT, J.

2

Filed 1/3/24  Knowles v. Longwood Management Corp. CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FABIAN KNOWLES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LONGWOOD MANAGEMENT CORP. et al.,<br><br>    Defendants and Appellants. | B314165<br><br>(Los Angeles County Super. Ct. Nos. 19STCV31526, 20STCV44876, 21STCV11563) |
| JOANNA CHAVEZ et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>LONGWOOD MANAGEMENT CORP. et al.,<br><br>    Defendants and Respondents. | B321047<br><br>(Los Angeles County Super. Ct. No. 19STCV31526) |

APPEAL from judgments and an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge. Judgment affirmed & order reversed in B314165; judgment affirmed in part, reversed in part in B321047.

Matern Law Group, Matthew J. Matern, Debra J. Tauger, Matthew W. Gordon and Vanessa M. Rodriguez for Plaintiff and Appellant and Plaintiffs and Appellants.

Paul Hastings, Leslie L. Abbott, Chris A. Jalian and Shera Y. Kwak for Defendants and Appellants and Defendants and Respondents.

\* \* \* \* \* \*

This appeal involves two related cases, both brought pursuant to the California Labor Code Private Attorneys General Act of 2004 as representative actions on behalf of the State of California (Lab. Code, § 2698 et seq.) (PAGA). The first, filed in September 2019, was brought by plaintiff and appellant Fabian Knowles against Longwood Management Corp. (Longwood), Alden Enterprises, Inc. (Alden) and 38 other corporate defendants (collectively, defendants) (the Knowles matter). The trial court dismissed all defendants except one—Longwood, on the ground that Knowles had not adequately alleged that the other 39 defendants (sometimes collectively referred to as the non-Longwood defendants) were his employers. Knowles appeals, arguing that dismissal of these 39 defendants was improper at the pleading stage because he adequately pled that all of the defendants were his employer under the integrated enterprise and joint employer theories. We find no error in the

trial court decision as to the Knowles matter and therefore affirm the dismissal of the non-Longwood defendants.

The second action, filed in March 2021, was brought by plaintiffs and appellants Joanna Chavez, Sharon Evans, and Lakeisha Oglesby (collectively, the Chavez plaintiffs) (the Chavez matter). The Chavez matter named the same 40 defendants that Knowles sued and contained identical claims.[1] The trial court sustained without leave to amend defendants' demurrer to the Chavez plaintiffs' complaint and entered a judgment dismissing the Chavez matter with prejudice. The Chavez plaintiffs' appeal, arguing that the Chavez plaintiffs sufficiently pled employment relationships with three of the defendants: Longwood, Green Acres Lodge Inc. (Green Acres), and View Park Convalescent Hospital, Inc. (View Park). The Chavez plaintiffs further argue the trial court erred in sustaining the demurrer as to all defendants for the same reasons it erred in dismissing the majority of the Knowles defendants. We reverse in part, as the Chavez plaintiffs have sufficiently alleged employment relationships with Green Acres and View Park.

We also address an appeal arising from the trial court's denial of the non-Longwood defendants' motion for costs pursuant to Code of Civil Procedure section 1032 in the Knowles matter.[2] As costs were mandatory under that statute, we reverse

---

[1]    Prior to bringing the second action, the Chavez plaintiffs sought to join the Knowles matter. The trial court denied the request. The Chavez plaintiffs do not appeal that ruling.

[2]    The non-Longwood defendants are the appellants in the cost appeal. For consistency, we continue to refer to them as the non-Longwood defendants in this portion of the opinion.

3

the trial court's order granting Knowles's motion to strike the non-Longwood defendants' costs.

## BACKGROUND

Knowles and the Chavez plaintiffs allege they were formerly employed by defendants as nonexempt employees.[3] They all had the job title of certified nursing assistant.

**The Knowles matter**

On July 2, 2019, Knowles filed a "Notice Pursuant to California Labor Code § 2699.3" (notice) with the California Labor and Workforce Development Agency (LWDA).[4] The notice listed all 40 defendants, and asserted that Knowles was "jointly employed" by all 40.[5] The letter listed numerous violations of

---

[3] On July 3, 2019, Knowles filed a wrongful discharge case against Alden and Longwood, two of the 40 defendants in the Knowles matter.

[4] Defendants filed a request for judicial notice asking this court to take judicial notice of the relevant PAGA notices and court records concerning related litigation. The request is granted.

[5] The 40 entities involved are Ability Homecare, Inc.; ADF Investments, Inc.; Alden; Artesia Healthcare, Inc.; Broadway Manor Care Center, Inc.; Burbank Healthcare, Inc.; Burlington Convalescent Hospital, Inc.; Canoga Healthcare, Inc.; Casa Bonita Convalescent Hospital, Inc.; Chino Valley Rehabilitation Center LLC; Coldwater Care Center LLC; Colonial Care Center, Inc.; Covina Care Center, Inc.; Crenshaw Enterprises, Inc.; Crofton Manor Associates, L.P.; Green Acres; Hospice Cheer; ICC Convalescent Corp.; Imperial Crest Healthcare Center, LLC; IRA David Enterprises, Inc.; JRB Investments, Inc.; Laurel Wellness and Nursing Center, LLC; Longwood; Longwood Manor

4

various Labor Code provisions and wage orders, including overtime, meal period, and rest period violations. Knowles made the allegations "on behalf of himself and all other similarly-situated current and former non-exempt employees" of all defendants within the State of California "during the four years preceding the date" of the notice. Knowles did not assert any specific facts regarding his alleged joint employment by all 40 entities.

On September 5, 2019, Knowles filed a PAGA complaint against the 40 entities. Knowles alleged generally that he was "employed by DEFENDANTS." However, the complaint also acknowledged that each of the 40 defendants was a separate corporate entity. Knowles alleged that the 40 defendants "were the joint employers" of Knowles and the other aggrieved employees, and "were the alter egos, divisions, affiliates, integrated enterprises, joint employers, subsidiaries, parents, principals, related entities, co-conspirators, authorized agents, partners, joint venturers, and/or guarantors, actual or ostensible, of each other." Each defendant answered the complaint, denying Knowles's allegations.

On September 24, 2020, defendants filed a motion for judgment on the pleadings. Defendants argued they all could not

Investments LP; Magnolia Gardens Convalescent Hospital, Inc.; Monterey Care Center, Inc.; Montrose Healthcare, Inc.; Normandie/Wilshire Retirement Hotel, Inc.; Northridge Care Center, Inc.; Norwalk Healthcare, Inc.; Park Anaheim Health Care, LLC; Pico Rivera Healthcare, Inc.; S.G.V. Healthcare, Inc.; San Dimas Retirement Center, Inc.; San Gabriel Convalescent Center, Inc.; Shea Healthcare Center, Inc.; Studio City Convalescent Hospital; Sunnyview Convalescent Hospital, Inc.; Tzippy Care, Inc; and View Park.

be the employer that purportedly aggrieved Knowles under PAGA, and Knowles was intentionally obscuring the identity of the employer he contended committed violations against him. Defendants argued that the letter to the LWDA was defective for the same reason. In addition, defendants argued Knowles had failed to plead facts showing that he properly named each entity as alleged alter ego or joint employers with respect to the Labor Code violations he asserted were committed against him. Defendants argued that the complaint was barred as it was an improper attempt to assign Knowles the PAGA claims of alleged aggrieved employees who were not his coworkers and were employed by different entities. Knowles opposed the motion.

On October 22, 2020, the trial court granted defendants' motion. The court noted the allegations were insufficient to state a cause of action against all defendants because "they lack allegations concerning (1) any appointment or contract of hire between [Knowles] and each defendant or (2) any defendant's exercise or control over [Knowles's] wages, hours, or working conditions." The court permitted Knowles to file an amended complaint consistent with its ruling by November 2, 2020.

Knowles filed his first amended complaint (FAC) on November 2, 2020. Knowles did not alter his allegation that he was "employed by DEFENDANTS." He also alleged that all defendants "exercised control over the wages, hours, and/or working conditions" of Knowles and the other aggrieved employees. However, he alleged, upon information and belief, that Longwood "retained or assumed a general right of control over the hiring, direction, supervision, discipline, discharge, and day-to-day aspects of the working conditions" of Knowles and the other aggrieved employees. He also alleged, on information and

6

belief, that his and other plaintiffs' hiring documents stated they were employees of Longwood. He added eight new paragraphs upon information and belief attempting to fortify his allegations concerning his joint employer theory. Knowles alleged that defendants had an interrelation of operations, common management, centralized control of labor relations, and common ownership and financial control, among other things. Knowles asserted that Longwood was the parent corporation, which exercised financial control over all other 39 defendants.

On December 9, 2020, defendants demurred to Knowles's FAC. Defendants argued that Knowles had ignored the court's directive to sufficiently allege an employer. Instead, defendants argued, Knowles continued to lump all 40 defendants together and failed to identify which one was his actual direct employer that hired and paid him. He continued to fail to allege any appointment or contract of hire with any of the defendants, or how any defendant exercised control of his wages, hours, or working conditions. Defendants argued that Knowles's general allegations of corporate relationships between the entities were insufficient.

On January 28, 2021, the trial court sustained defendants' demurrer to the FAC in part. The court noted that "[w]hile the FAC states facts sufficient to establish Longwood employed [Knowles], the FAC does not allege sufficient facts alleging appointment or contract existed between [Knowles] and all other defendants." The court noted that Knowles's "mere conclusions, contentions and deductions" regarding the relationship between the separate entities were insufficient to support PAGA claims against those other entities.

The trial court granted Knowles leave to amend "to state allegations of a contract between [Knowles] and defendants outside of Longwood or state allegations that defendants outside of Longwood exercised control over [Knowles's] wages, hours or working conditions."

Knowles filed his second amended complaint (SAC) on February 16, 2021. Knowles added allegations that, on information and belief, all defendants exercised control over Knowles's and other aggrieved employees' "wages, hours, and working conditions by, *inter alia*, jointly creating, implementing, and enforcing uniform wage and hour policies, practices, and procedures." Knowles alleged upon information and belief that all defendants "exercised control over the wages, hours, and/or working conditions of" Knowles and the other aggrieved employees, and that defendants collectively "retained or assumed a general right of control over the hiring, direction, supervision, discipline, discharge, and day-to-day aspects of the working conditions" of Knowles and the other aggrieved employees. Knowles added a new paragraph that he worked for all defendants "at their Alden Terrace Convalescent Hospital facility located at 1240 South Hoover Street, Los Angeles, California 90006." Knowles did not allege that he worked for Alden, but maintained he worked for all 40 defendants at Alden's physical location. Finally, Knowles added a paragraph about a news story he located suggesting that all defendants jointly entered a settlement agreement with the Department of Justice for their alleged joint violations of the "False Claims Act," including "allegations of jointly submitting false claims to Medicare for

8

rehabilitation therapy services that were not reasonable or necessary."**6**

On March 22, 2021, the non-Longwood defendants filed their demurrer or, in the alternative, motion to strike Knowles's SAC. Defendants argued that Knowles failed to identify which of the non-Longwood defendants was his actual employer, including who paid him, or allegedly failed to pay him. Defendants asserted that because Knowles continued to decline to allege an appointment or contract of hire between him and each defendant, and continued to decline to assert any defendant's control over his wages, hours, or working conditions—with the exception of Longwood—that the demurrer should be sustained with prejudice.

---

**6** Knowles attached to the SAC an Internet printout dated July 13, 2020, stating that "Longwood Management Corporation and 27 affiliated skilled nursing facilities . . . have agreed to resolve allegations that they violated the False Claims Act by submitting false claims to Medicare for rehabilitation therapy services that were not reasonable or necessary . . . ." Defendants asserted that the paragraph concerning the Web site press release should be stricken as irrelevant and misleading. In light of its order sustaining defendants' demurrer to the SAC with prejudice, the trial court deemed defendants' motion to strike moot. Defendants renew their objection to the press release as somehow supporting Knowles's joint-employer theory on appeal. Defendants point out that Knowles never sought judicial notice of the Internet printout in the trial court, nor would there be a basis to grant such notice in any event. As discussed below, we find the Internet printout insufficient to suggest an employment relationship between Knowles and the 39 non-Longwood defendants.

On May 11, 2021, the trial court sustained the demurrer without leave to amend. The court explained: "These facts . . . do not set forth sufficient allegations to fully comply with the Court's October 22, 2020 or January 28, 2021 orders. First, Plaintiff's allegations regarding a contract between him and Non-Longwood Defendants and Non-Longwood Defendants' exercise of control over Plaintiff's wages, hours, or working conditions are conclusory. . . . Second, Plaintiff cannot rely on his alter ego/joint employer/integrated enterprise theory of liability to impose liability on Non-Longwood Defendants when Plaintiff has not established any employee-employer relationship with Non-Longwood Defendants." Because the court had twice granted Knowles leave to amend to allege an employer-employee relationship with non-Longwood defendants, the court found that permitting further amendments would be futile and prejudicial.

On June 9, 2021, the trial court entered judgment dismissing with prejudice all defendants except Longwood.

On July 13, 2021, Knowles filed his notice of appeal from the judgment of dismissal.

**The Carillo matter**

On October 13, 2020, Knowles's attorney filed a request for leave to file an amended complaint adding 12 individuals as additional named plaintiffs and PAGA representatives in the Knowles matter. On November 13, 2020, the trial court denied Knowles's request for an ex parte order shortening time to hear the motion. On November 20, 2020, Knowles's attorneys filed a new duplicate PAGA lawsuit against the same 40 defendants (the Carillo matter). On December 2, 2020, Knowles filed a notice of related cases conceding that the Knowles matter and the Carillo matter were substantially similar. Knowles's attorneys also filed

10

three more substantively identical LWDA letters under Knowles's LWDA case number, purporting to name further PAGA representatives.

**The Chavez matter**

On January 5, 2021, the Chavez plaintiffs filed a "Notice Pursuant to California Labor Code § 2699.3" with the LWDA. The notice listed the same 40 defendants as were listed in Knowles's complaint and asserted the Chavez plaintiffs were "jointly employed" by all 40. The notice was substantially similar to that filed by Knowles and used the same LWDA case number.

On March 22, 2021, Knowles's attorneys filed an ex parte application for an order shortening time to file a third amended complaint adding the Chavez plaintiffs as additional PAGA representatives in the Knowles matter. The trial court denied the application for order shortening time. Due to potential statute of limitations issues with their claims, the Chavez plaintiffs chose to file a separate complaint. On March 25, 2021, Knowles's attorneys filed the complaint in the Chavez matter. On April 8, 2021, the operative FAC was filed in the Chavez matter. On April 23, 2021, the trial court deemed the Knowles, Carillo, and Chavez matters related, with Knowles designated as the lead case.[7]

---

[7] Knowles's attorneys thereafter filed a fourth duplicative action against the same defendants (*Bertirotti v. Longwood Management Corp,* (Aug. 14, 2023, B323365) [app. dism.]), which was on appeal in this court until the parties filed a joint stipulation and remand informing this court that the Supreme Court's decision in *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 had resolved the only issue pending in that appeal. On August 14, 2023, the matter was reversed and remanded to the Superior Court per stipulation of the parties.

11

On June 8, 2021, defendants demurred to the Chavez plaintiffs' FAC. Defendants argued that this was the third identically pled lawsuit filed by Knowles's attorneys containing identical PAGA claims against the same defendants. Because it was a "carbon copy" of the Knowles lawsuit, defendants argued, it suffered from the same pleading defects. Defendants argued the lawsuit unfairly forced them to have to litigate the same issues in multiple duplicate lawsuits, and it violated the rule against claim splitting. Defendants cited Code of Civil Procedure section 430.10, subdivision (c), which permits a trial court to sustain a demurrer where "[t]here is another action pending between the same parties on the same cause of action."

On July 9, 2021, the trial court sustained without leave to amend defendants' demurrer to the Chavez plaintiffs' FAC. The court noted that the allegations in the Chavez plaintiffs' FAC were almost identical to the allegations contained in the Knowles SAC, with only two differences. First, the plaintiffs' names in the complaints were different, and second, paragraph 56 in the Knowles SAC, which stated: "PLAINTIFF worked for DEFENDANTS at their Alden Terrace Convalescent Hospital facility located at 1240 South Hoover Street, Los Angeles, California 90006," had been replaced with paragraphs 56-58 in the Chavez plaintiffs' FAC, which stated:

"56. PLAINTIFF CHAVEZ worked for DEFENDANTS at their Green Acres Lodge facility, located at 8101 Hill Drive, Rosemead, California 91770. The entity listed on PLAINTIFF CHAVEZ's earnings statements was 'GREEN ACRES LODGE INC DBA GREEN ACRES LODGE' and 'CREEN ACRES LODGE, INC. DBA GREEN ACRES LODGE.'

"57.  PLAINTIFF EVANS worked for DEFENDANTS at their View Park Convalescent Hospital facility, located at 3737 Don Felipe Drive, Los Angeles, California 90008.  The entities listed on PLAINTIFF EVANS' earnings statements were 'VIEW PARK CONVALESCENT HOSPITAL INC. DBA VIEW PARK CONVALESCENT HOSPITAL,' 'VIEW PARK CONVALESCENT HOSPITAL INC DBA VIEW PARK CONVALESCENT HOSPITAL,' and 'FACILITIES PAYROLL SERVICES VIEW PARK CONV HOSPITAL.'

"58.  PLAINTIFF OGLESBY worked for DEFENDANTS at their View Park Convalescent Hospital facility, located at 3737 Don Felipe Drive, Los Angeles, California 90008.  The entities listed on PLAINTIFF OGLESBY's earnings statements were: 'VIEW PARK CONVALESCENT HOSPITAL INC DBA VIEW PARK CONVALESCENT HOSPITAL' and 'FACILITIES PAYROLL SERVICES VIEW PARK CONV HOSPITAL.'"

The court noted it had twice previously sustained a demurrer to the Knowles SAC due to Knowles's failure to allege any employment relationship with the non-Longwood defendants. The Chavez plaintiffs' FAC also did not show any employee-employer relationship with 37 of the named defendants.  Because the Chavez plaintiffs' FAC did not show such employee-employer relationships with the other named defendants and was largely "verbatim to the SAC in the Knowles case," the demurrer to the Chavez plaintiffs' FAC was sustained.

The court noted that the Chavez plaintiffs offered to amend the FAC to add facts regarding defendants' "shared corporate office, shared officers, shared agent for service of process and the legal name of the hiring employer listed on the notice provided to Plaintiffs."  The Chavez plaintiffs did not offer "to amend the

13

complaint to provide an employee-employer relationship" with the remaining defendants, therefore the demurrer to the Chavez plaintiffs' FAC was sustained without leave to amend.

The trial court entered judgment dismissing the Chavez matter with prejudice on August 5, 2021.

On August 30, 2021, the Chavez plaintiffs filed a notice of appeal.

## Consolidation

On October 20, 2021, Knowles filed a motion to consolidate the appeals of the Knowles matter and the Chavez matter. On November 15, 2021, this court granted the motion.

On June 13, 2023, on the court's own motion, this court ordered the non-Longwood defendants' appeal of the denial of their costs under Code of Civil Procedure section 1032 to be considered with the consolidated appeals for the purposes of argument and decision.


## DISCUSSION

## I.    Applicable law and standard of review

"The function of a demurrer is to test the sufficiency of the complaint by raising questions of law." (*Aragon–Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 238.) "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "'"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law."'" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid.*) "'As a reviewing court we are

14

not bound by the construction placed by the trial court on the pleadings but must make our own independent judgment thereon, even as to matters not expressly ruled upon by the trial court.'" (*Aragon–Haas, supra*, at p. 239.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)

## II.     The Knowles matter[8]

The trial court sustained defendants' demurrer to the SAC—with the exception of Longwood—after Knowles repeatedly failed to allege an employment relationship with any of the other 39 defendants.

PAGA permits an "aggrieved employee" to bring a civil action "on behalf of himself or herself and other current or former employees" for violations of the Labor Code. (Lab. Code, § 2699, subd. (a).) An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (Lab. Code § 2699, subd. (c); *Adolph v. Uber Technologies, Inc., supra*, 14 Cal.5th at p. 1116 ["To have standing to bring a PAGA action, a plaintiff must be an 'aggrieved employee,' which the statute defines as 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.'"].) Thus, PAGA requires that in order to state a

---

[8]     We discuss the Knowles matter and the Chavez matter separately, as the parties have done.

claim, a plaintiff must allege employment with the alleged violator.

Knowles initially alleged that he was employed by all 40 defendants, whom, he admitted in his allegations, are separate corporate entities. Knowles generally alleged that he was employed by all 40 entities, and all 40 defendants were the "joint employers" of Knowles and other aggrieved employees. The trial court found these allegations overbroad and insufficient to determine which entity or entities was Knowles's employer for the purposes of PAGA and thus directed Knowles to allege an appointment or contract of hire between Knowles and each defendant or any defendant's exercise of control over Knowles's wages, hours, or working conditions.

The FAC suffered from the same flaw, as Knowles continued to allege that he was employed by all 40 entities. However, Knowles singled out Longwood as the "parent corporation" of the other 39 defendants and alleged that his hiring documents stated he was an employee of Longwood. The trial court then sustained defendants' demurrer to the FAC except as to Longwood, finding the allegations of employment with Longwood to be sufficient.

Upon being granted a second leave to amend, Knowles added additional allegations regarding the defendants' alleged corporate relationships. He also added that he worked for all defendants "at their Alden Terrace Convalescent Hospital facility." However, he did not include allegations suggesting that Alden was his employer. Instead, Knowles continued to allege that his hiring documents stated he was an employee of Longwood.

The trial court then sustained the non-Longwood defendants' demurrer without leave to amend, finding that Knowles had not sufficiently pled an employee-employer relationship with these 39 defendants, therefore his PAGA pleading was insufficient against them.

We find no error in the trial court's ruling. The trial court "need not accept as true . . . deductions, contentions or conclusions of law or fact." (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292.) Nor must it credit material facts that are "inconsistent with other allegations." (*Ibid.*) Having accepted Knowles' allegation that Longwood was his named employer, the trial court was not required to accept his vague and contradictory allegations attempting to show that he was employed by all 40 separate corporate entities named as defendants.

In the SAC, Knowles continued to generally allege that "DEFENDANTS exercised control over the wages, hours, and/or working conditions of PLAINTIFF and other AGGRIEVED EMPLOYEES." He made no specific allegation that each alleged defendant exercised such control. Further, he changed his earlier allegation that Longwood "assumed a general right of control over the hiring, direction, supervision, discipline, discharge, and day-to-day aspects of the working conditions" of Knowles and the other aggrieved employees and instead alleged that defendants collectively exercised "a general right of control over the hiring, direction, supervision, discipline, discharge, and day-to-day aspects of the working conditions" of Knowles and the other aggrieved employees. As set forth above, this general allegation in the SAC conflicted with Knowles's earlier allegation in the FAC that Longwood controlled day-to-day aspects of his

17

employment. The trial court was not required to accept Knowles's conclusory allegations that 39 separate corporations had joint control of his hiring, discharge, and day-to-day working conditions when this allegation conflicted with his earlier, specific allegation that Longwood did so.[9] (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 ["A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false."].)

The Supreme Court discussed the question of joint-employer liability for Labor Code violations in *Martinez v. Combs* (2010) 49 Cal.4th 35 (*Martinez*). In *Martinez*, seasonal agricultural workers were seeking unpaid minimum wages from two produce merchants and a field representative, after the farmer who had directly employed them became insolvent. (*Id.* at pp. 47-48.)[10] Despite recognizing that there may be situations in

---

[9] At oral argument, Knowles's counsel argued that the FAC and the SAC were not inconsistent because the allegation that defendants collectively exercised control over the "wages, hours, and/or working conditions" of Knowles and the other aggrieved employees remained the same in the two complaints. However, the consistency between these two paragraphs does not cure the inconsistency concerning the allegations regarding the right of control over the "hiring, direction, supervision, discipline, discharge, and day-to-day aspects of the working conditions" of Knowles and the other aggrieved employees.

[10] The plaintiffs in *Martinez* were suing for unpaid minimum wages under Labor Code section 1194. The Supreme Court discussed the Industrial Welfare Commission's definition of "employer," which had "the obvious utility of reaching situations in which multiple entities control different aspects of the

18

which "multiple entities control different aspects of the employment relationship" (*Martinez*, at p. 76), the high court held that the plaintiffs had failed to demonstrate an employment relationship with any of the existing defendants—two produce merchants through whom the farmer sold produce, together with principals and field representatives (*id.* at pp. 42-43).[11] Significantly, the plaintiffs' factual assertions did not show that the defendants' "business relationship with [the farmer] allowed [them] to exercise control over [the plaintiffs'] wages and hours." (*Martinez*, at p. 72.) Although the agent of one of the defendants convinced the plaintiffs to return to work, this did not constitute an offer of employment. (*Id.* at pp. 74-75.) And although the defendants' field employees "spoke with [the farmer's] employees about the manner in which strawberries were to be packed," such actions did "not indicate the field representatives ever supervised or exercised control over [the farmer's] employees." (*Id.* at p. 76.)

While *Martinez* was before the high court after a grant of summary judgment in favor of the defendants, the case sets a standard for determining whether a plaintiff has adequately pled a joint employer relationship. Under *Martinez*, to adequately plead a joint employer situation, the plaintiff must adequately

---

employment relationship, as when one entity, which hires and pays workers, places them with other entities that supervise the work." (*Martinez, supra*, 49 Cal.4th at p. 59.) Thus, the high court noted that the definition of employer was "'specifically intended to include both temporary employment agencies and employers who contract with such agencies to obtain employees.'" (*Ibid.*)

[11] The farmer had been granted a discharge in bankruptcy. (*Martinez, supra*, 49 Cal.4th at p. 42.)

19

allege each alleged employer's supervision or exercise of control over the plaintiffs' employment.

A specific allegation that each alleged violator of the Labor Code was Knowles's employer—i.e., had control over Knowles's wages or working conditions—is an essential element of a PAGA claim against that entity. (Lab. Code, § 2699, subd. (c); *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 ["Not every private citizen can serve as the state's representative [in a PAGA claim]. Only an *aggrieved employee* has PAGA standing."].) Despite repeated opportunities to cure his vague, conclusory and contradictory allegations that he was employed by the 39 non-Longwood defendants, Knowles did not correct this omission. Because he was missing an essential element of his claim against the 39 non-Longwood defendants, the demurrer as to these defendants was properly sustained. (*Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476, 481 ["[I]f the defendant negates any essential element [of a PAGA claim], we will affirm the order sustaining the demurrer as to the cause of action."].)[12]

Knowles asserts the trial court erred in various ways. We address his arguments below.

### A. *Dismissal of Alden*

Knowles first argues that Alden should not have been dismissed from the case because Alden and its counsel made judicial admissions that Alden was Knowles's true employer.

---

[12] Because we find that the trial court did not err in finding that Knowles's pleading was insufficient as to the 39 non-Longwood defendants, we decline to address defendants' argument that Knowles's LWDA letter was deficient as a matter of law.

Knowles contends that Alden's counsel made multiple oral and written statements to this effect, and that these statements should be treated as binding judicial admissions. Knowles cites various parts of the record where defendants' counsel noted "[Knowles] only ever worked at Alden Enterprises."[13]

---

[13] At other points in oral proceedings, the court asked defendants' counsel, "it's my understanding that . . . defendants contend that Alden is the only proper defendant; is that correct?" To which counsel responded, "Yes, Your Honor. That is correct." Later in the proceedings, defendants' counsel argued that Knowles "should have sued his employer. And we know who that is, actually. It's Alden Terrace or Enterprises. Because he sued that entity as his employer in his individual wrongful termination action that he filed in the court." During the same argument, counsel commented: "[W]hat this case should be about, Your Honor, is Mr. Knowles' right to bring a PAGA case against his employer on behalf of the employees who work with him, for that employer, which was Alden Terrace, or Alden Enterprises. And he chose not to do that and instead to file this extremely convoluted complaint against 39 entities to attempt to expand PAGA in a way that it's never been expanded before by any other court." During further argument, counsel stated, "there's one plaintiff, Fabian Knowles, and he worked for Alden Enterprises. And plaintiffs have alleged in their complaint that he worked for 39 different employers." Finally, defendants' counsel noted, "Knowles, plaintiff[,] works for Alden Enterprises, Inc., even though he won't admit that in his complaint. That's what his pay stubs show, and that's what he admitted at deposition." Defendants' written statements to this effect were included in a July 2020 joint case management statement, a September 2020 joint initial status conference statement, an October 2020 joint status conference statement, a January 2021 joint status conference statement, and a May 2021 joint status conference statement.

21

Knowles relies on *People v. Jackson* (2005) 129 Cal.App.4th 129, 161, for the proposition that "[o]ral statements of counsel may be treated as judicial admissions if they were intended to be such or reasonably construed by the court or the other party as such." Knowles argues that Alden's counsel's repeated statements to this effect meet this test.

"'Judicial admissions may be made in a pleading, by stipulation during trial, or by response to request for admission.'" (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 451 (*Barsegian*).) A judicial admission must be conceded by both sides. (*Id.* at p. 452.) Throughout the proceedings, Knowles did not plead that Alden was his employer, instead asserting that he had 40 different employers. Knowles continues to advance his contradictory argument that the 39 non-Longwood defendants should all be considered his employers under theories of joint employment and integrated enterprise. For a factual statement to be considered a judicial admission, neither party may attempt to contradict it. (*Ibid.* [a judicial admission is "removed from the issues in the litigation because the parties *agree* to its truth"].) A judicial admission "is therefore conclusive both as to the admitting party *and as to that party's opponent*. [Citation.] Thus, if a factual allegation is treated as a judicial admission, then neither party may attempt to contradict it—the admitted fact is effectively conceded *by both sides*." (*Ibid.*)

Knowles's attempt to argue that he was employed by all 40 defendants, with his hiring documents naming Longwood as his employer, undermines his argument that defendants have created a judicial admission that he was employed by Alden. As the purported admission by defendants that Knowles was employed by Alden was never admitted by Knowles—and in fact,

22

was contradicted by Knowles—it cannot be treated as a judicial admission.  (*Barsegian, supra*, 215 Cal.App.4th at p. 452.)

The trial court was not required to accept Knowles's vague and conclusory allegations that he was employed by 40 entities for the purposes of a PAGA claim.  As Knowles never pled that he had an employee-employer relationship with Alden, or that Alden exercised control over his wages, hours, and working conditions, the trial court did not err in dismissing the matter as to Alden.

**B.    *Pleading of joint employer/integrated enterprise theories***

Knowles next argues that because his SAC sufficiently pled joint employer and integrated enterprise theories, he sufficiently established an employment relationship with all 40 defendants. Knowles cites *Burke v. Zanes* (1961) 193 Cal.App.2d 773, 780, for the proposition that a plaintiff may plead the existence of an employee-employer relationship through allegations from which an inference of such a relationship can be drawn.  In *Burke*, the plaintiff sought to invoke Labor Code section 2850, although there was no allegation in the complaint that described an employee-employer relationship between any of the parties "or allegations from which an inference of this relationship could be drawn."  (*Burke*, at p. 780.)  The *Burke* court held that because there was no allegation from which an inference of an employee-employer relationship could be drawn, "the inapplicability of [the Labor Code] section [was] patent."  (*Ibid.*)  The case does not suggest that Knowles has sufficiently inferred an employment relationship with any of the non-Longwood defendants.

As to the joint employment theory, Knowles cites *Henderson v. Equilon Enterprises, LLC* (2019) 40 Cal.App.5th 1111, 1129.  In *Henderson*, summary judgment was affirmed in

23

favor of the defendant on the ground that the defendant was not the plaintiff's joint employer. (*Id.* at p. 1114.) In reaching this conclusion, the *Henderson* court explained the joint employer theory in wage and hour claims: "In a joint employer claim, the worker is an admitted employee of a primary employer, and is subject to the protection of applicable labor laws and wage orders. The distinct question posed in such claims is whether 'another business or entity that has some relationship with the primary employer should properly be considered a joint employer of the worker and therefore also responsible, along with the primary employer, for the obligations imposed by the wage order.'" (*Id.* at p. 1128.) Joint employer cases are relevant in situations "such as when the primary employer is unwilling or no longer able to satisfy claims of unpaid wages and workers must look to another business entity that may be separately liable as their employer." (*Ibid*.) Knowles has included no allegations suggesting that the 39 non-Longwood entities should be responsible for Knowles's claims under a joint employer theory. Knowles has alleged that Longwood is the primary employer and the parent corporation of the other entities. Under the circumstances, there is no alleged reason that the other 39 entities should be held responsible for Longwood's alleged violations.

Knowles cites *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737 (*Laird*), overruled on other grounds in *Reid v. Google* (2010) 50 Cal.4th 512, 524, for the proposition that "[t]wo corporations may be treated as a single employer for purposes of liability" under the integrated enterprise theory. In *Laird*, a former employee sued her employer and her employer's parent corporation alleging employment discrimination and wrongful termination. (*Laird*, at p. 731.) The parent corporation

24

moved for summary judgment on the ground that it was not liable for any acts or omissions of its corporate subsidiary as to the subsidiary's former employee. (*Id.* at p. 732.) The trial court granted summary judgment on the ground that the parent corporation was not the plaintiff's employer and there was no material issue of fact on this point requiring trial. (*Id.* at p. 735.) In affirming the trial court judgment, the *Laird* court discussed the plaintiff's argument that the parent corporation was her employer under the integrated enterprise theory. Significantly, the *Laird* court limited its discussion to "whether two corporations [could] be considered a single employer" (*id.* at p. 737) under the integrated enterprise test—it did not come close to suggesting that 40 separate corporations could be considered a single employer under this test. The court stated, "Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result." (*Ibid.*) The court further noted that "[i]n particular, there is a strong presumption that a parent company is not the employer of its subsidiary's employees." (*Ibid.*) The integrated enterprise test requires a plaintiff to show that the two corporate entities have "interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control." (*Ibid.*) The most important of these factors, according to the *Laird* court, is whether the parent corporation "exercised day-to-day control" over the subsidiary's "employment decisions in general." (*Id.* at p. 739.) The *Laird* plaintiff had failed to raise disputed issues of fact suggesting that the parent corporation maintained control of the subsidiary's employment decisions. (*Ibid.*)

25

*Laird* does not provide support for Knowles's conclusory allegation that he was employed by the 39 non-Longwood defendants as a single integrated enterprise.[14] Knowles provides no specific allegations that all 39 non-Longwood defendants exercised day-to-day control over the employment decisions as to Knowles, as required under *Martinez.* Nor does he provide any authority that the integrated enterprise theory permits a PAGA lawsuit against 40 defendants. Thus, we reject Knowles's position that the SAC survives under a theory of integrated enterprise.

C. *Evidentiary versus ultimate facts*

Knowles next argues that the trial court erred by improperly requiring evidentiary, instead of ultimate, facts in the pleadings. Knowles contends that general allegations of an employment relationship are allegations of an ultimate fact and thus are sufficient against a demurrer. In support of this contention, Knowles cites *Kiseskey v. Carpenters' Trust for So. California* (1983) 144 Cal.App.3d 222, 230 (*Kiseskey*), in which the plaintiffs alleged that two individuals were "agents and/or employees" of the respondent union "acting within the scope of

---

[14] Knowles lists 12 allegations in the SAC, which he suggests meet the criteria for integrated enterprise set forth in *Laird.* Those allegations include using the same employee handbook; creating, implementing and enforcing uniform wage and hour policies; using the same employment application at all their facilities; and requiring employees to sign the same acknowledgements as part of the onboarding process, among other things. None of the 12 listed allegations state that the non-Longwood defendants exercised day-to-day control over the employment decisions related to Knowles. (*Laird, supra*, 68 Cal.App.4th at p. 739.)

26

their employment" at the time of their tortious conduct towards the plaintiffs. (*Id.* at p. 226.) As one of their arguments supporting demurrer, the defendants argued that such allegations were insufficient with respect to the right to recover compensatory damages. The *Kiseskey* court disagreed, stating "[t]he general allegation of agency is one of ultimate fact, sufficient against a demurrer." (*Id.* at p. 230.) *Kiseskey* is distinguishable because there is no suggestion that the individual plaintiffs were employed by 40 different corporate entities.[15] The allegation that certain individuals alleged to have committed torts are employed as agents of a union does not equate to the allegation that a single individual is employed by 40 separate entities for the purposes of a PAGA lawsuit. As set forth above, Knowles was required to allege an employment relationship with the named defendants in this matter. With the exception of Longwood, he did not adequately allege such a relationship.

Knowles asserts that he was only required to plead, not prove, his employee status at this stage of the litigation. He argues that any doubt that defendants have regarding the employment relationship should be resolved in discovery. (Citing

---

[15] The operative complaint in *Kiseskey* alleged that the persons undertaking the tortious conduct were "'agents and/or employees of their co-defendants Carpenters and/or Local 1506 and/or Does XI through XX.'" (*Kiseskey, supra,* 144 Cal.App.3d at p. 235.) There is no discussion of the possibility that this included multiple defendants—in fact, the discussion proceeds with reference to a single employer: "the conclusional words 'permission and consent' used in the FAC, coupled with the factual allegations therein, constitute an allegation, sufficient if proven, upon which punitive damages may be assessed against defendant for the conduct of its agents." (*Ibid.*)

27

*Filipoff v. Superior Court* (1961) 56 Cal.2d 443, 451 [purpose of discovery is to "ascertain the facts and to take the 'game' out of litigation"].) As set forth above, Knowles's conclusory and contradictory allegations were insufficient as a matter of law to create a prima facie case that the 39 non-Longwood defendants were Knowles's employer under PAGA.

### D. *Case conduct*

Knowles argues that the non-Longwood defendants' attack on the SAC is at odds with their initial conduct in the case, namely, that they each answered the initial complaint. Knowles cites no legal authority suggesting that by answering Knowles's initial complaint, these defendants somehow conceded that the later iterations of the complaint were factually sufficient to survive demurrer. On appeal, an appellant must provide reasoned argument and citations to legal authority, or we may treat the point as waived. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) We disregard Knowles's conclusory argument that is unsupported by pertinent legal authority.

### E. *Joint settlement agreement*

Knowles also argues that defendants' act of jointly entering into a settlement agreement with the Department of Justice for their alleged violations of the False Claims Act further supports the joint employer and integrated enterprise theories. Knowles emphasizes that the joint settlement agreement supports the allegation that defendants jointly own and operate numerous skilled nursing facilities in California, despite their separate corporate forms. As set forth in *Laird*, the separate corporate structures of the 39 non-Longwood defendants must be respected. (*Laird, supra*, 68 Cal.App.4th at p. 737.) In the absence of

28

sufficient allegations that each of the 39 non-Longwood corporations exerted control over employment decisions relevant to Knowles, Knowles failed to state a claim under PAGA. The joint settlement agreement does not assist Knowles on this point.

### F. *PAGA cases with multiple employer-defendants*

Knowles cites three PAGA cases in which PAGA plaintiffs named numerous employer-defendants in a single case. All are distinguishable and do not address the precise issue raised by defendants in this matter.

*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539 (*Jarboe*) was a PAGA action brought by a former employee against an auto group, its 12 affiliated dealerships, and three individual defendants who owned the group. (*Id.* at pp. 543-544.) The plaintiff was hired by "DKD of Davis, Inc., doing business as Hanlees Davis Toyota" (DKD of Davis), but shortly after he began working was transferred to "Leehan of Davis, Inc., doing business as Hanlees Chrysler Dodge Jeep Ram Kia." (*Ibid.*) Following his termination, he brought the wage and hour action individually and on behalf of a purported class against all the defendants described above.

The issue on appeal was whether the defendants could collectively move to compel arbitration based on an arbitration agreement that the plaintiff signed with DKD of Davis. Significantly, the defendants in the *Jarboe* matter did not contest that they were all affiliated entities for the purpose of the PAGA action. In fact, their position was that the arbitration agreement applied to all defendants in the matter based on their status as affiliated companies. (*Jarboe, supra*, 53 Cal.App.5th at p. 545.) The trial court denied the motion to compel arbitration as to all the defendants except DKD of Davis, finding that "the defendants

29

failed to establish that the [arbitration agreement] applied to entities other than [DKD of Davis]." (*Id*. at pp. 546-547.) The *Jarboe* court affirmed. The court rejected the defendants' argument that they should be treated as "'joint employer[s]'" based on the plaintiff's allegations that they were "'joint employer[s]'" and that "Jarboe's complaint treats all defendants as a single enterprise." (*Id*. at p. 554.) The *Jarboe* court found the plaintiff's "boilerplate allegations" of joint employment insufficient to support the defendants' equitable estoppel claim. (*Ibid.*) Thus, *Jarboe* does not support Knowles's position that the defendants in this matter should be treated as joint employers.

*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034 was a putative class action brought against eight different hospital entities for wage and hour violations. The operative complaint contained allegations that "Pacific Health Corporation owns and operates hospitals and exercises control over the daily operations and working conditions of health care facilities operated by the other defendants." (*Id*. at p. 1037.) The issue on appeal was whether the trial court properly denied class certification based on a previous decision in a substantially similar case. (*Id*. at p. 1040.) The *Bridgeford* court reversed the lower court's decision, finding that the present plaintiffs were not bound by the previous denial of class certification. (*Id*. at p. 1044.) The *Bridgeford* court noted that the lower court "did not separately address plaintiffs' individual claims or their representative claims under PAGA," and the defendants conceded as much. (*Ibid.*) The case is unhelpful in advancing Knowles's efforts to assert that the 40 entities here were all his collective employer.

Finally, Knowles cites *Callahan v. Brookdale Senior Living Communities, Inc.* (9th Cir. 2022) 42 F.4th 1013 (*Callahan*). In *Callahan*, an employee brought a putative class action under PAGA against 10 senior living facilities that she alleged were her employer. The *Callahan* court collectively referred to the entities as "Brookdale," explaining that "Brookdale owns and operates senior living communities throughout the United States." (*Id.* at p. 1017.) The issues on appeal were whether the district court properly denied a motion to intervene filed by a plaintiff in an overlapping PAGA case, and whether the proposed intervenor was entitled to appeal an order approving a settlement reached in the underlying case. (*Ibid.*) The case has no relevance and does not suggest that the 40 defendants here may all be collectively considered Knowles's employer for the purposes of this PAGA matter.

### G.    *Applicability of Labor Code section 245.5*

Knowles argues that the trial court erroneously relied on the definition of the term "employer" set forth in Labor Code section 245.5 to conclude that Knowles's SAC was insufficient. Knowles cites *Mathews v. Happy Valley Conference Center, Inc.* (2019) 43 Cal.App.5th 236 (*Mathews*) as authority that he need not allege a contract for hire with the non-Longwood defendants when that employment relationship is based on an integrated or joint enterprise theory of employment.

*Mathews* involved a former employee that brought an action against a church and his employer, a conference center that was the church's subordinate affiliate, for retaliatory termination and other claims. (*Mathews, supra*, 43 Cal.App.5th at p. 240.) The defendants contested a jury finding that the church and conference center could be considered a single

31

employer for the purposes of the plaintiff's title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), and Labor Code violation claims.  In concluding that the jury's decision was reasonable, the *Mathews* court considered the four factors considered by the *Martinez* court: "interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control."  (*Id.* at p. 251.)  The *Mathews* court acknowledged that "centralized control of labor" is often "considered the most important factor." (*Id.* at p. 252.)  The evidence supporting the jury verdict on this point included evidence that sexual harassment complaints "make their way up the chain of command to the church itself" and extensive involvement of an individual from the church in the plaintiff's termination.  (*Ibid.*)

The two defendants involved in *Mathews* were unquestionably in a "'parent-subsidiary'" relationship, and conceded common ownership.  (*Mathews, supra*, 43 Cal.App.5th at p. 251.)  There is a difference between alleging that two entities, related in a parent-subsidiary relationship, are an individual's employer, and alleging that 40 different entities are an individual's employer.  Further, for the purposes of PAGA, the plaintiff is required to plead more than common ownership or affiliation between defendants.  The plaintiff is required to plead that the defendant was his or her employer.  As discussed in detail above, Knowles did not do so in this matter.

Knowles faults the trial court for relying on the definition of "employee" found in Labor Code section 245.5 because the definition falls under the "Healthy Workplaces, Healthy Families Act of 2014."  (Lab. Code, § 245, subd. (a).)  Knowles points out

that the Healthy Workplaces, Healthy Families Act of 2014 specifies that the provisions contained in the article "do not diminish, alter, or negate any other legal rights, remedies, or procedures available to an aggrieved person." (Lab. Code, § 245, subd. (b).) While Knowles criticizes the trial court for using this definition, he fails to provide an alternative definition that he believes is more applicable. Thus, Knowles's argument is not well taken. The PAGA statute does not define the term "employer," thus the trial court did not err in relying generally on the definition of the term set forth in Labor Code section 245.5 and in *Martinez, supra*, 49 Cal.4th at page 68.

Knowles has failed to show error in the trial court's decision sustaining the non-Longwood defendants' demurrer without leave to amend.[16]

---

[16] Knowles states he should have been granted leave to amend the SAC because he proposed to allege "the name and address of the legal entity on the wage statements he received during his employment," among other things. We find the trial court did not abuse its discretion in denying leave to amend despite Knowles's offer to add the legal entity on the wage statements he received. Knowles did not indicate which entity it was. Having already alleged that his and other plaintiffs' hiring documents stated they were employees of Longwood, the trial court had no reason to assume that such allegation would change its ruling. In other words, Knowles failed to suggest any amendments that would change the ruling of the court. Knowles had been given two chances to allege an employment relationship with the non-Longwood defendants, and under the circumstances, the trial court was not required to allow him an additional opportunity without further specifying proposed allegations that would change the court's ruling. (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1110

33

## III. The Chavez matter

The Chavez plaintiffs contend the trial court erred in dismissing the Chavez matter in its entirety despite finding that the Chavez plaintiffs sufficiently pled an employment relationship with Longwood, Green Acres and View Park, and despite those entities' judicial admissions that they employed the Chavez plaintiffs.

### A. *The Chavez plaintiffs' allegations*

Like Knowles, the Chavez plaintiffs alleged generally that the same 40 defendants were "joint employers" of the Chavez plaintiffs and other aggrieved employees, and the entities were the "alter egos, divisions, affiliates, integrated enterprises, joint employers, subsidiaries, parents, principals, related entities, co-conspirators, authorized agents, partners, joint venturers, and/or guarantors, actual or ostensible, of each other." Like Knowles, the Chavez plaintiffs alleged upon information and belief that Longwood "was the parent corporation of and exercised financial control over" the 39 non-Longwood defendants. Like Knowles, the Chavez plaintiffs alleged that their "hiring documents stated that [they] were employees of [Longwood]."

As did Knowles, the Chavez plaintiffs pled generally that all 40 defendants "exercised control over [their] wages, hours, and working conditions by, *inter alia*, jointly creating, implementing, and enforcing uniform wage and hour policies, practices, and procedures at all of their facilities, including, but not limited to . . . the wages to be paid to [them], . . . the hours to be worked

["leave to amend is warranted when the complaint is in some way defective, but the plaintiff has shown in what manner the complaint can be amended and '"how that amendment will change the legal effect of [the] pleading"'"].)

by [them], . . . and the working conditions that [they] would be subject to." The Chavez plaintiffs also alleged that the same 40 defendants "retained or assumed a general right of control over the hiring, direction, supervision, discipline, discharge, and day-to-day aspects of the working conditions of [the Chavez plaintiffs]."

Unlike Knowles, the Chavez plaintiffs alleged that they "worked for DEFENDANTS at their Green Acres Lodge facility, located at 8101 Hill Drive, Rosemead, California 91770. The entity listed on [their] earnings statement was 'GREEN ACRES LODGE INC DBA GREEN ACRES LODGE' and 'GREEN ACRES LODGE, INC. DBA GREEN ACRES LODGE.'" The Chavez plaintiffs similarly alleged that Evans worked for defendants at their View Park Convalescent Facility located at 3737 Don Felipe Drive, Los Angeles, California 90008, and that this entity was listed on Evans's earnings statement. The Chavez plaintiffs similarly alleged that Oglesby worked for defendants at the same View Park facility, and was paid by that entity.[17]

### B. *The demurrer was properly sustained as to Longwood*

These allegations were sufficient to show an employment relationship between the Chavez plaintiffs and Longwood. However, to the extent that the Chavez plaintiffs bring an identical PAGA action against Longwood, the demurrer was

---

[17]  Knowles did not include in the SAC allegations that the entity listed on his earnings statement was Alden. Knowles alleged only that he worked for defendants "at their Alden Terrace Convalescent Hospital facility located at 1240 South Hoover Street, Los Angeles, California 90006."

properly sustained as a duplicate action.  (Code Civ. Proc.,
§ 430.10, subd. (c) [permitting party to demur to a pleading if
"[t]here is another action pending between the same parties on
the same cause of action"].)  Although the named plaintiffs are
different, all are suing as proxies of the state.  (*ZB, N.A. v.
Superior Court* (2019) 8 Cal.5th 175, 185 [named plaintiff "acts as
"'the proxy or agent of the state's labor law enforcement
agencies'" and "'represents the same legal right and interest as'"
those agencies"]; *Arias v. Superior Court* (2009) 46 Cal.4th 969,
986 ["An employee plaintiff suing, as here, under [PAGA], does so
as the proxy or agent of the state's labor law enforcement
agencies."].)[18]  Thus, because the Chavez plaintiffs have brought
identical claims against Longwood, the Chavez plaintiffs' action
is a duplicate action to Knowles's action and Longwood's
demurrer was properly sustained.

---

[18]     In support of the Chavez plaintiffs' position that multiple
employees may prosecute separate, overlapping PAGA actions
simultaneously against the same employer, the Chavez plaintiffs
cite *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 866.  While
the *Julian* court noted that "nothing in the PAGA statutory
scheme forecloses separate but similar actions by different
employees against the same employer," the court went on to
explain that "the doctrine of collateral estoppel, rather than the
statutory scheme, shields the employer from . . . a series of PAGA
actions by different employees . . . ."  (*Id.* at pp. 866-867.)  The
*Julian* court explained, "Because an employee's PAGA action
'functions as a substitute for an action brought by the
government itself,' under the doctrine of collateral estoppel, a
judgment unfavorable to the employee binds the government, as
well as all aggrieved nonparty employees potentially entitled to
assert a PAGA action."  (*Id.* at p. 867, citing *Arias v. Superior
Court, supra*, 46 Cal.4th at p. 986.)

36

The Chavez plaintiffs argue that the redundancy of the two complaints should cause the latter of the two complaints to be stayed, rather than dismissed on demurrer.  Both parties discuss *Shaw v. Superior Court* (2022) 78 Cal.App.5th 245 (*Shaw*), which involved duplicative PAGA claims filed against Beverages & More!, Inc. (BevMo) in Los Angeles County and Contra Costa County.  BevMo brought a motion to stay the Contra Costa County action under the doctrine of exclusive concurrent jurisdiction and under the court's inherent authority.  (*Id.* at p. 252.)  The *Shaw* court affirmed the trial court's decision to stay the matter under the pending concurrent jurisdiction doctrine. (*Id.* at p. 263.)  In so doing, the court noted, "[w]e do not believe the absence of an express statutory prohibition on the filing of duplicative PAGA representative actions manifests the requisite unequivocal intent to repeal the well-established exclusive concurrent jurisdiction rule, especially considering the rule's important policies of avoiding conflicting decisions and preventing vexatious litigation and multiplicity of suits." (*Id.* at p. 259.)  While the *Shaw* decision involved a stay, and not a dismissal after demurrer, we note that this case differs from the duplicative action in *Shaw* in that it was brought in the same court by the same attorneys.  Nothing in *Shaw* suggests that a dismissal is improper where duplicative lawsuits filed by the same attorneys in the same court would "duplicate court efforts, waste resources, and potentially produce divergent results." (*Id.* at p. 262.)  *Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781—a case involving numerous pending asbestos actions—is distinguishable for the same reason.  And in *Boyd v. Freeman* (2017) 18 Cal.App.5th 847, the court noted in dicta that "when a plea of abatement based on a pending prior action is

37

established in a second action, the appropriate remedy is the entry of an interlocutory judgment postponing trial, rather than dismissal of the action." (*Id.* at p. 858, fn. 6.) The *Boyd* court concluded that the plaintiff's second action against the defendant in that matter "did not contravene the rule against splitting a cause of action," thus it does not stand for the proposition that the trial court's dismissal of the Chavez plaintiffs' action against Longwood was erroneous under the circumstances of this case. (*Ibid.*)

Nothing in Code of Civil Procedure section 430.10, subdivision (c) limits a trial court's ability to dismiss a matter following demurrer on the ground that it is duplicative of another action. Further, other courts have affirmed dismissals following demurrer pursuant to Code of Civil Procedure section 430.10, where plaintiffs file substantially similar cases against the same defendants. (See, e.g., *Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 192-193 [affirming dismissal of a second action by the same party against the same defendants and sanctioning plaintiff for the frivolous appeal].) Thus, we reject the Chavez plaintiffs' suggestion that the trial court was required to stay the Chavez matter against Longwood, rather than dismiss it after sustaining the demurrer.

Further, the allegations that Longwood was the entity listed on the Chavez plaintiffs' hiring documents is inconsistent with the allegations that Green Acres and View Park were the entities listed on the Chavez plaintiffs' earnings statements. The trial court was not required to accept these conflicting allegations. For these reasons, the demurrer in the Chavez matter was properly sustained, without leave to amend, as to Longwood.

38

**C.** ***The Chavez plaintiffs adequately pled an employment relationship with Green Acres and View Park***

The allegation that the entity listed on the Chavez plaintiffs' earning statement was Green Acres is sufficient to suggest an employment relationship between the Chavez plaintiffs and Green Acres because it is essentially an allegation that Green Acres had control over the Chavez plaintiffs' wages. The same is true for the allegations that the entity listed on Evans's and Oglesby's earnings statements was View Park. These allegations are sufficient to indicate that Green Acres and View Park had control over the wages of the Chavez plaintiffs.[19] Therefore, we agree with the Chavez plaintiffs that the trial court erred in sustaining the demurrer as to these two defendants in the Chavez matter.

The trial court acknowledged that the Chavez plaintiffs alleged an employer-employee relationship with Longwood, Green Acres, and View Park, stating, "The FAC in this case does not include any facts that allege any sort of employee-employer relationship with anyone but Longwood Management Corp, the Green Acres Lodge, and View Park Convalescent Hospital. Plaintiffs have not shown any relationship between Plaintiffs and the remaining thirty-seven (37) defendants." Despite its acknowledgement of the allegations concerning employment with Longwood, Green Acres and View Park, the trial court concluded "[b]ecause the FAC does not allege any facts showing an

---

[19]    Labor Code section 226, subdivision (a), requires an employer to provide its employees an accurate statement in writing showing items such as gross wages earned, total hours worked, and deductions, among other things.

employee-employer relationship and is verbatim to the SAC in the Knowles case, the demurrer is SUSTAINED."

At the time the trial court issued this ruling, the court had already sustained, without leave to amend, the demurrer as to the 39 non-Longwood defendants in the Knowles case.[20]  Thus, the only remaining defendant in the Knowles matter was Longwood.  As such, the two matters were no longer identical in terms of the identities of the defendants.  Further, the Chavez plaintiffs' FAC was different in a significant way: it alleged that two specific entities, Green Acres and View Park, were the entities listed on the three Chavez plaintiffs' earnings statements.  The trial court erred in failing to acknowledge these differences between the two pleadings.

For this reason, the judgment is reversed in part, with directions to the trial court to reverse its ruling sustaining the demurrer in the Chavez matter as to Green Acres and View Park.  Based on the discussion above in part II as to the Knowles matter, the demurrer was properly sustained as to the remaining defendants in the Chavez matter.

---

[20]     The demurrer to Knowles's SAC was sustained as to the non-Longwood defendants, without leave to amend, on May 11, 2021.  The demurrer to the Chavez plaintiffs' FAC was sustained, without leave to amend, on July 9, 2021.

## IV. Costs in the Knowles matter[21]

### A. *Proceedings regarding costs in the Knowles matter*

The trial court entered judgment dismissing the 39 non-Longwood defendants in the Knowles matter on June 9, 2021. The court's order specified that "[c]osts may be claimed and contested in accordance with the rules adopted by the Judicial Council.  CCP § 1034(a); Cal Rules of Ct 3.1700(a)(1)."

On June 25, 2021, the 39 non-Longwood defendants timely filed their memorandum of costs in the amount of $23,627.08. The costs consisted of filing and motion fees, court reporter fees established by statute, and fees for electronic filing or service. The non-Longwood defendants sought to receive only the costs they incurred, not any costs incurred by Longwood, the party that remained in the lawsuit.

On July 3, 2021, Knowles filed a motion to strike defendants' costs, arguing that a prevailing employer in a PAGA action is not entitled to an award of costs as a matter of law.  The non-Longwood defendants opposed Knowles's motion, arguing that the applicable costs statute—Code of Civil Procedure section 1032, subdivision (b) (section 1032(b)), entitles a prevailing party to an award of ordinary costs in any action or proceeding unless another statute expressly precludes such recovery—which PAGA does not do.

The trial court heard Knowles's motion to strike on December 7, 2021.  The written tentative decision was to deny the motion.  At the hearing, the court requested the parties

---

[21]     Knowles and the non-Longwood defendants have each filed requests for judicial notice accompanying their briefing in the cost appeal.  We grant both requests.

41

address two issues. First, the court requested that Knowles provide legislative history that he had referenced in his briefing. Further, the court asked Knowles's counsel to provide additional argument specific to the facts of this case. The court provided a supplemental briefing schedule for the parties to address these issues and continued the hearing.

On January 10, 2022, the trial court posted a tentative ruling that adhered to the first tentative. Following argument, the court took the matter under submission.

On December 13, 2021, Knowles's counsel filed a new, largely identical matter with a different plaintiff, Meghan Bertirotti (the Bertirotti matter) (see footnote 7, *ante*.). The Bertirotti matter was a PAGA action against the same 40 defendants named in the Knowles and Chavez matters. On January 12, 2022, Knowles's counsel filed a notice of related cases regarding Knowles and Bertirotti. On January 28, 2022, the court ordered the cases related and assigned to her court, with Knowles as the lead case.

On February 14, 2022, Knowles's counsel filed a peremptory challenge in the Bertirotti matter pursuant to Code of Civil Procedure section 170.6, declaring that Judge Williams Court was prejudiced such that Bertirotti could not, or believed she could not, have a fair and impartial trial of the matter.

On February 15, 2022, Judge Williams Court issued an order granting Knowles's motion to strike the non-Longwood defendants' costs. The order did not mention section 1032(b), pursuant to which the non-Longwood defendants sought costs.

On the same date, Judge Williams Court filed an order noting that the peremptory challenge was "filed and accepted"

42

and that Knowles and all related cases were referred to department 1 for "review and reassignment purposes."

On February 24, 2022, Knowles's counsel electronically served defendants' counsel with the order granting the motion to strike costs. On February 25, 2022, Knowles's counsel electronically served defendants' counsel with Judge Williams Court's order accepting their peremptory challenge and transferring the Knowles matter and related cases for reassignment.

On April 16, 2022, the non-Longwood defendants filed their notice of appeal from the trial court's order granting Knowles's motion to strike costs.

### B. *Applicable law and standard of review*

"'The right to recover costs exists solely by virtue of statute.'" (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 989 (*Murillo*).) The statutory provision on which the non-Longwood defendants relied in seeking costs in the Knowles matter was section 1032(b), which provides, "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." The term "prevailing party" includes "a defendant in whose favor a dismissal is entered." (Code Civ. Proc., § 1032, subd. (a)(4).) It is undisputed that the 39 non-Longwood defendants were prevailing parties in the Knowles matter.

A prevailing party's right to recover costs under section 1032(b) is mandatory except as otherwise expressly provided by statute. "'"[C]osts are available as 'a matter of right' when the prevailing party is within one of the four categories designated by statute."'" (*Charton v. Harkey* (2016) 247 Cal.App.4th 730, 738; see *Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1375 ["'If a

43

party fits one of the definitions of "prevailing" listed in C.C.P. 1032(a)(4) . . . that party is entitled as a matter of right to recover costs."'].) Caselaw "cautions against engrafting exceptions onto the clear language of section 1032." (*Crib Retaining Walls, Inc. v. NBS/Lowry, Inc.* (1996) 47 Cal.App.4th 886, 890.)

Because there is no dispute as to the non-Longwood defendants' status as prevailing parties, the only issue before us is whether there exists an applicable exception to section 1032(b) "expressly provided by statute." "Where, as here, the determination of whether costs should be awarded is an issue of law on undisputed facts, we exercise de novo review." (*City of Long Beach v. Stevedoring Services of America* (2007) 157 Cal.App.4th 672, 678.)

### C. *The trial court erred in denying costs*

#### 1. *PAGA does not provide an express exception to section 1032(b)*

Section 1032(b) provides that "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." The only exception is where "otherwise expressly provided by statute." (§ 1032(b).) Thus, we must first determine whether PAGA contains an express exception to section 1032(b). (*Murillo, supra*, 17 Cal.4th at p. 991.)

Although Labor Code section 2699, subdivision (g)(1) provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs," the statute makes no mention of prevailing employers. "In other words, it does not *expressly* disallow recovery of costs by prevailing [employers]." (*Murillo, supra*, 17 Cal.4th at p. 991 [discussing prevailing sellers under Civ. Code, § 1794, subd. (d).].)

44

We reject Knowles's argument that the language of Labor Code section 2699, subdivision (g)(1) permitting a prevailing employee to recover "an award of reasonable attorney's fees and costs" is the equivalent of an express exception to Code of Civil Procedure section 1032(b) for prevailing employers. Instead, Knowles's argument is based on an interpretation that this provision implicitly prohibits costs to a prevailing employer. The California Supreme Court rejected such an argument in *Murillo, supra*, 17 Cal.4th at page 991.

In *Murillo*, the court considered a one-way fee and cost shifting provision in the Song-Beverly Act that expressly permitted a prevailing plaintiff-buyer to recover costs and fees, but was silent as to a prevailing defendant-seller. The Supreme Court affirmed that a prevailing seller should receive an award of costs under section 1032(b) due to the Song-Beverly Act's silence on the issue of prevailing seller costs. The high court reasoned that because the Song-Beverly Act "makes no mention of prevailing sellers[,] . . . it does not *expressly* disallow recovery of costs by prevailing sellers." (*Murillo, supra*, 17 Cal.4th at p. 991.)

*Murillo* provides guidance for the interpretation of similar one-way fee and cost shifting statutes found in the Labor Code. (*Plancich v. United Parcel Service, Inc.* (2011) 198 Cal.App.4th 308, 312 (*Plancich*).) In *Plancich*, an employee sued his employer for various Labor Code violations including failure to pay overtime compensation pursuant to Labor Code section 1194, which contains a one-way fee and cost recovery provision in favor of prevailing employees. The employer prevailed in the action. The *Plancich* court recognized that the Labor Code provision in question "gives a prevailing *employee* the right to recover attorney's fees and costs; however, the statute makes no mention

of prevailing *employers*.  (*Plancich*, at p. 313.)  Relying on the Supreme Court's decision in *Murillo*, the *Plancich* court determined that "any suggestion that a prevailing employer is prohibited from recovering its costs is, at most, implied by the language of [Labor Code] section 1194." (*Plancich*, at p. 313.)  Thus, the provision did not "provide an 'express' exception to the general rule permitting an employer, as a prevailing party, to recover costs under [section 1032(b)]." (*Ibid.*)  Similarly, because PAGA contains no provision creating an express exception to section 1032(b)'s mandate, the prevailing alleged employers in the Knowles matter—the non-Longwood defendants—should have been granted their costs.

### 2.    *The legislative history*

We need not delve into the legislative history of PAGA because the words of the relevant statutes are clear.  Section 1032(b) is mandatory in the absence of an express exception, and PAGA provides no such express exception.  Knowles's only argument is that such an exception should be implied.

As the Supreme Court stated in *Murillo*, "We could not, of course, ignore the actual words of the statute in an attempt to vindicate our perception of the Legislature's purpose in enacting the law.  '"This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed."'" (*Murillo, supra*, 17 Cal.4th at p. 993.)  Because the words of section 1032(b) are clear, and there is no express exception found in PAGA, we need not look further.

Knowles argues that the Legislature's intent in enacting PAGA was to protect employees and encourage aggrieved employees to seek legal redress for Labor Code violations.  (Citing *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59

46

Cal.4th 348, 390, abrogated on other grounds in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [142 S.Ct. 1906, 1910].) Under PAGA, the Legislature has provided "two financial incentives for aggrieved employees to pursue the recovery of civil penalties under PAGA." (*Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 991.) First, the aggrieved employee receives a portion of the civil penalties recovered, and second, "any employee who prevails in an action is entitled to his or her reasonable attorney fees and costs." (*Ibid.*) Knowles argues that this one-way costs and fees provision is a strong incentive for aggrieved employees to bring PAGA claims, and the Legislature could not have intended to saddle unsuccessful proxies with an onerous costs bill and thereby discourage them from bringing PAGA claims. Knowles refers to discussion in the legislative history that various employer groups objected to the one-way attorney fee and cost provision. Knowles points out that the provision was kept despite the employers' objections.

Knowles is correct that the one-way attorney fee and cost provision was left in the statute despite the objections of the employer advocates. However, this does not change our analysis. The Legislature could have, but did not, create in PAGA an express exception to section 1032(b). Therefore, the mandatory cost provision found in section 1032(b) applies. (See *Murillo, supra*, 17 Cal.4th at p. 991.)

### 3. *The caselaw cited by Knowles is unpersuasive*

Knowles relies heavily on two cases that the trial court cited in its ruling. Neither addresses the issue before us, thus neither is persuasive.

The first case, a class action captioned *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420 (*Earley*), makes no mention of

47

section 1032(b). Instead, the appeal addressed two unrelated issues: "(1) if relevant provisions of the Labor Code allow for a successful defendant's recovery of attorney's fees in a case involving a claim for overtime compensation, and (2) whether absent class members, who have failed to 'opt out,' may be held liable for a successful defendant's fees or costs." (*Id*. at p. 1424.) As Knowles acknowledges, it was not a PAGA case and addressed attorney's fees. Knowles emphasizes the *Earley* court's discussion of the public policies underlying the overtime wage laws in rendering its decision that the one-way fee shifting provision in Labor Code section 1194 trumped the reciprocal attorney fee provision found in Labor Code section 218 in that matter. (*Earley*, at pp. 1430-1431.) The public policies underlying the Labor Code claims at issue in *Earley* cannot override the plain language of the statutes at issue in this matter. Further, as costs under section 1032(b) were not at issue in *Earley*, any reference to costs in the *Earley* decision are dicta and not controlling here.

In *Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242 (*Ling*), disapproved on other grounds in *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 117, the plaintiff sued her former employer for various Labor Code violations including unpaid overtime wages, waiting time penalties, and premium pay for failure to provide meal and rest periods. The matter was ordered into arbitration. At issue on appeal was whether the arbitrator "exceeded his power by awarding statutory attorney fees to a defendant employer for work performed in defeating an employee's . . . claims, contrary to public policy embedded in Labor Code section 1194's one-way fee-shifting provision." (*Id*. at p. 1247.) The *Ling* court concluded

that the arbitrator did exceed his power by awarding such fees. (*Ibid.*) As Knowles acknowledges, the *Ling* court correctly stated that "[i]n the absence of a specific Labor Code provision, costs are awarded in employment dispute matters under Code of Civil Procedure section 1032." (*Id.* at p. 1253.) Although *Ling* involved attorney fees, Knowles argues that the same reasoning underlying the decision applies to a prevailing employer's entitlement to costs under Labor Code section 1194. Knowles argues that there is no reason to believe that *Ling* would have been decided differently had the issue been whether a prevailing employer had the right to recover costs under that statute.

We disagree. The analysis is different when a prevailing employer requests costs under section 1032(b). Under the plain language of that statute, a prevailing party is entitled to costs in any action or proceeding unless another statute expressly precludes such recovery. We are not permitted to ignore the actual words of the statute in an attempt to further the perceived policies behind the law. (*Murillo, supra*, 17 Cal.4th at p. 993.)

Finally, we address *Cruz v. Fusion Buffet, Inc.* (2020) 57 Cal.App.5th 221 (*Cruz*), the most recent appellate decision on the issue of a one-way fee and cost shifting provision in the Labor Code. Without discussing *Murillo,* the *Cruz* court disagreed with *Plancich, supra*, 198 Cal.App.4th 308 and instead relied on *Ling* and *Earley* in interpreting "[Labor Code] section 1194's silence with respect to prevailing employers" as signifying "a legislative intention to provide a one-way cost and fee shifting provision." (*Cruz, supra*, at p. 242.) The *Cruz* court concluded that "where Labor Code section 1194 applies, it displaces any application of Code of Civil Procedure section 1032, subdivision (b)." (*Ibid.*)

49

We decline to follow *Cruz* for several reasons, primarily because of the *Cruz* court's failure to discuss, or even mention, the Supreme Court's clear direction in *Murillo* that where a statute "makes no mention of prevailing sellers[,] . . . it does not *expressly* disallow recovery of costs by prevailing sellers." (*Murillo, supra*, 17 Cal.4th at p. 991; see *Cruz, supra*, 57 Cal.App.5th at p. 242.)[22]  Further, we note that the *Cruz* matter did not involve PAGA, but involved two Labor Code provisions with specific fee-shifting provisions.  Labor Code section 1194 contained a one-way fee shifting provision providing that a prevailing employee was entitled to "'reasonable attorney's fees, and costs of suit.'" (*Id.* at p. 240, italics omitted.)  Labor Code section 218.5 "is a unique two-way fee shifting statute, providing for an award of attorney fees and costs to the prevailing party . . . ; however, where the prevailing party is *someone other than an employee*, that party is entitled to recover fees and costs *only* if the covered action was brought in *bad faith* by the employee." (*Cruz, supra*, at p. 240.)

In *Cruz*, the plaintiff-employee sued a corporation and its officers for various Labor Code violations.  The claims against the officers were brought under an alter ego theory of liability, and the plaintiff-employee recovered nothing against the two

---

[22]    Knowles attempts to distinguish *Murillo* because a plaintiff brings a case under the Song-Beverly Act to enforce his or her own rights under the statute, while plaintiffs in PAGA actions are suing on the state's behalf to vindicate the state's interests.  Had the Legislature intended to make this distinction, it could have done so in the express wording of either section 1032(b) or PAGA.  Instead, section 1032(b) applies broadly to "*any* action or proceeding," unless "otherwise expressly provided by statute." (Italics added.)

50

individual defendants.  The trial court granted the plaintiff-employee's motion to strike the individual defendants' costs, and the *Cruz* court agreed.  The individual defendants argued that the plaintiff-employee "should be precluded from obtaining attorney fees and costs from them for the period after they each made a Code of Civil Procedure section 998 offer, and that they, in fact, 'are entitled, at a minimum, to costs.'" (*Cruz, supra*, 57 Cal.App.5th at p. 239.)[23]

After discussing the public policy behind Labor Code section 1194, the *Cruz* court determined that "public policy is not served by allowing for a more general cost-shifting provision, such as that expressed in Code of Civil Procedure section 1032, to apply to require the shifting of costs in favor of a prevailing defendant employer . . . ." (*Cruz, supra*, 57 Cal.App.5th at p. 242.)  Relying on *Earley* and *Ling*, the *Cruz* court "declin[ed] to interpret [Labor Code] section 1194's silence with respect to prevailing employers as anything other than a legislative intention to provide a one-way cost and fee shifting provision." (*Ibid.*)  In short, the *Cruz* court found that "section 1032 does not apply where the fee and cost provisions of [Labor Code] sections 1194 or 218.5 apply." (*Id.* at p. 241.)  The *Cruz* court did not discuss section 1032(b)'s requirement of an express exception to its mandate.

The *Cruz* court failed to consider the Supreme Court's directive that "we must attempt to effectuate the probable intent

---

[23]     The *Cruz* court described the individual defendants' argument as "a short argument in their opening brief that is not further addressed on reply." (*Cruz, supra*, 57 Cal.App.5th at p. 239.)  Thus, the *Cruz* court's incomplete analysis of section 1032(b) may have resulted from inadequate briefing.

of the Legislature, as expressed through the actual words of the statutes in question." (*Murillo, supra*, 17 Cal.4th at p. 990.) "Because section 1032(b) grants a prevailing party the right to recover costs '[e]*xcept as otherwise expressly provided by statute*' (italics added), we must first determine whether [the statute at issue] provides an 'express' exception." (*Id.* at p. 991.) Following the *Murillo* court's reasoning, where a statute gives a prevailing employee the right to recover costs and fees, but does not mention prevailing employers, it cannot be read to expressly disallow costs by prevailing employers. (*Ibid.*) We decline Knowles's suggestion that we find that "legislative intent overrides the letter of section 1032." Because the words of section 1032(b) are clear, and there is no express exception in PAGA, the non-Longwood defendants are entitled to their costs.

## DISPOSITION

The judgment in the Knowles matter is affirmed.

The postjudgment order granting Knowles's motion to tax costs is reversed.

The judgment in the Chavez matter is reversed as to Green Acres and View Park only.

Each party is to bear its own costs of appeal.

_____
CHAVEZ, J.

We concur:

_____        _____
LUI, P. J.                                                      HOFFSTADT, J.

52